2008-NMSC-038

188 P.3d 1175

**COMPUTER ONE, INC., a New Mexico corporation, and Caroline C. Roberts, individually, Plaintiffs–Petitioners,**

v.

**GRISHAM & LAWLESS P.A., a professional association, Thomas L. Grisham, and Stephen F. Lawless, Defendants–Respondents.**

No. 30,425.

Supreme Court of New Mexico.

June 23, 2008.

Law Office of William G. Gilstrap, William G. Gilstrap, Albuquerque, NM, for Petitioners.

Sheehan, Sheehan & Stelzner, P.A., Jaime L. Dawes, Briggs F. Cheney, Albuquerque, NM, for Respondents.

## OPINION

BOSSON, Justice.

{1} A legal malpractice claim against a client's former attorneys was barred when the court ruled that, as a compulsory counterclaim, the allegations of legal malpractice had to be filed in response to an attorney

charging lien previously filed by those same attorneys. Relying upon *Bennett v. Kisluk,* 112 N.M. 221, 814 P.2d 89 (1991), we conclude that the client's malpractice claim was not a compulsory counterclaim and was not barred by res judicata. The Court of Appeals having decided otherwise, we reverse and remand to the district court to proceed with the claim for legal malpractice.

## BACKGROUND

{2} Computer One was awarded a contract to supply computer equipment and training to Sandia Corporation (Sandia). After Computer One entered into the contract, Sandia began to request less equipment and training than it had indicated in the request for bid proposals. Eventually, Computer One filed a lawsuit against Sandia alleging breach of contract and misrepresentation.

{3} Computer One was represented by Grisham & Lawless, P.A. (the Firm), who are the defendants in this appeal.[1] In that litigation, the Firm entered into a settlement agreement with Sandia on Computer One's behalf. Computer One refused to ratify the settlement agreement and maintained that it had not authorized the Firm to enter into the settlement agreement. The Firm then withdrew from representing Computer One, and on February 21, 2001, filed a notice of an attorney charging lien against the settlement proceeds in the amount of its attorney fees owed and unpaid.

{4} Sandia filed a motion in district court to enforce the settlement. The court held an evidentiary hearing on Sandia's motion on June 5, 2001, to determine whether the Firm had the authority to enter into the settlement agreement. In July 2001, the district court found that Computer One had given the Firm sufficient authority, and the court ordered the settlement agreement enforced.

{5} During the July 2001 proceedings, the district court held an ancillary hearing to attempt to resolve a dispute regarding the form of the order for disbursement of the settlement funds. During that hearing, Computer One indicated that it believed that the Firm's charging lien might not be enforceable. The court suggested that Computer One file objections to the charging lien and that Computer One file a motion asking the court to determine the reasonableness of the fees.

{6} After the Firm amended its charging lien to add accrued interest, Computer One filed its objections to the charging lien and argued that the fees were "unreasonable and excessive." In its objections, Computer One renewed its argument that the Firm had acted without authority in entering the settlement agreement. Computer One also argued that the Firm's fees were unreasonable and inflated. Finally, Computer One contended that the charging lien was void because the contingency fee agreement upon which the charging lien was based did not comply with the procedural requirements of Rule 16–105(C) NMRA, which controls contingency fee agreements. Computer One asked the court to disallow the charging lien or reduce the amount of fees payable to the Firm from the settlement proceeds.

{7} In response, the Firm argued that Computer One's objections "[were] nothing more than an attempt to relitigate matters that have already been litigated;" namely, the Firm's authority to negotiate the settlement with Sandia. The district court held a hearing on February 11, 2002, in which it entertained argument from all counsel. The court rejected Computer One's objections as untimely filed.[2] Shortly thereafter, the court ordered disbursement of the settlement funds including payment of the Firm's charging lien.

{8} A year and a half later, in November 2003, Computer One brought a legal malpractice claim against the Firm, arguing that the Firm had been negligent in the manner in which it had evaluated Computer One's claims against Sandia and their potential set-

---

1. Computer One filed the malpractice lawsuit against the firm of Grisham & Lawless, P.A., as well as against Grisham and Lawless individually. This Opinion refers to Defendants collectively as the Firm.

2. Neither party provided this Court with a transcript from the February 11, 2002 hearing. This Court was able to procure a copy of the transcript, although the copy is only a draft, not a formal transcript. This draft transcript has been added to the record proper for this appeal.

tlement value. Responding, the Firm moved for summary judgment and characterized the malpractice claim as a compulsory counterclaim that Computer One had failed to assert against its charging lien and was, therefore, precluded from raising it in a separate lawsuit. The district court denied summary judgment on August 30, 2004.

{9} In November 2004, the Firm again moved for summary judgment. The Firm pointed out to the court that Computer One had filed formal objections to their charging lien and those objections were "in large part the same objections which are the subject of [the] legal malpractice suit." In other words, the substance of the malpractice claims had already been litigated and lost by Computer One. Computer One disagreed, arguing that its objections to the charging lien only challenged the Firm's authority to enter into the settlement agreement with Sandia, while the malpractice claim challenged the quality of the legal representation actually provided. Persuaded that the legal malpractice claim had to be brought as a compulsory counterclaim to the charging lien, the district court granted the second motion for summary judgment in the Firm's favor, thereby barring Computer One from proceeding with its legal malpractice suit.

{10} Computer One appealed to the Court of Appeals which affirmed the district court. *Computer One, Inc. v. Grisham & Lawless, P.A.*, 2007–NMCA–079, 141 N.M. 869, 161 P.3d 914, *cert. granted*, 2007–NMCERT–006, 142 N.M. 17, 162 P.3d 172. The Court concluded that Computer One was in the position of an "opposing party" to the Firm's charging lien, and was therefore obligated to bring its legal malpractice claim as a compulsory counterclaim under Rule 1–013(A) NMRA, or be forever barred. *Computer One, Inc.*, 2007–NMCA–079, ¶¶ 11–15, 141 N.M. 869, 161 P.3d 914. Additionally, the Court of Appeals held that Computer One's legal malpractice claim and its objections to the Firm's charging lien arose out of the same transaction, and therefore, the malpractice claim was barred by principles of res judicata. *Id.* ¶¶ 16–23. We granted certiorari in recognition of the important policy questions inherent in any decision that bars a client from bringing legal malpractice charges against its former counsel.

## STANDARD OF REVIEW

{11} Because there are no disputed issues of fact in this case, we review the district court's grant of summary judgment de novo. *Salazar v. Torres*, 2007–NMSC–019, ¶ 5, 141 N.M. 559, 158 P.3d 449. Similarly, we review de novo the district court's determination of whether our compulsory counterclaim rule, Rule 1–013(A), or res judicata bars a party's claims. *Deflon v. Sawyers*, 2006–NMSC–025, ¶ 3, 139 N.M. 637, 137 P.3d 577.

## DISCUSSION

{12} We begin our discussion with a brief overview of the history of attorney charging liens, because "[t]he resolution of the issue presented here becomes clear when the historical basis for the 'charging lien' is considered." *N. Pueblos Enters. v. Montgomery*, 98 N.M. 47, 49, 644 P.2d 1036, 1038 (1982). Unlike many other states, New Mexico does not have a statute providing an attorney with the right to assert a charging lien against the fruits of a settlement or a judgment. *See Prichard v. Fulmer*, 22 N.M. 134, 139, 159 P. 39, 40 (1916). Therefore, our courts have looked to common law and principles of equity to determine the rights afforded an attorney by such a lien. *Id.* This Court has defined a charging lien as

the right of an attorney or solicitor to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right. It does not usually attach until the recovery of judgment, and then does not prevent an honest settlement, nor a payment to his client until the attorney has notified the debtor of his intention to claim a lien.

*Id.* at 140, 159 P. at 41.

{13} The charging lien arises from a recognition that when an attorney assists a client in procuring a judgment or a "fund

recovered by his efforts," the attorney needs to be paid from that fund for the value of services rendered before the proceeds are disbursed. A court, sitting in equity, has a responsibility to enforce the lien against the judgment to protect lawyers from dishonest clients. *See id.* at 145, 159 P. at 42 ("The court, having control of its own process, saw to it that the client did not utilize it so as to defeat the attorney of his fee."). Thus, a lien acts as "indirect payment" from the client to the attorney for services rendered. *Id.* at 142, 159 P. at 41.

{14} "In New Mexico, there are four requirements for the imposition of an attorney charging lien." *Sowder v. Sowder,* 1999–NMCA–058, ¶ 10, 127 N.M. 114, 977 P.2d 1034. First, there must be a valid contract between the attorney and the client, although the contract need not be express. *Id.* Second, there must be a judgment, or "fund," that resulted from the attorney's services. *Id.* ¶ 11. Third, the attorney must have given clear and unequivocal notice that he intends to assert a lien, and notice must be given to the "appropriate parties." *Id.* ¶ 12. Finally, the lien must be timely—notice of the lien must be given "before the proceeds [from] the judgment have been distributed." *Id.* ¶ 14. Our cases have put attorneys on notice to file the charging lien and enforce it "in the court in which the underlying suit is filed, not in an independent action." *Thompson v. Montgomery & Andrews, P.A.,* 112 N.M. 463, 467, 816 P.2d 532, 536 (Ct.App.1991). Failing to meet these requirements, an attorney may not invoke the equitable powers of the court to impose a lien, but must resort to remedies *at law,* such as a subsequent lawsuit for breach of contract long after proceeds have been disbursed. *See Sowder,* 1999–NMCA–058, ¶ 8, 127 N.M. 114, 977 P.2d 1034.

{15} In addition to these procedural requirements, a court in its equitable powers "may inquire into the reasonableness of the asserted ... lien." *N. Pueblos Enters.,* 98 N.M. at 49, 644 P.2d at 1038. In *Northern Pueblos Enterprises,* our Court of Appeals acknowledged the limits of a charging lien and held that the trial court does not "adjudicate the reasonableness of the fee as

between [the lawyer] and his client beyond the limits of the charging lien." *Id.* Instead, the lawyer is "free to go against [the client] for the remaining fees due under the contract." *Id.; see also Sowder,* 1999–NMCA–058, ¶ 16, 127 N.M. 114, 977 P.2d 1034 (holding that an attorney's charging lien was invalid because it was not timely asserted, but noting that the attorney was "free ... to seek recovery of its fees through another method" (citing *N. Pueblos Enters.,* 98 N.M. at 49, 644 P.2d at 1038)).

{16} From this overview we distill certain principles. First, a charging lien is asserted against the judgment or settlement fund arising from a lawsuit, not against the client; it is not an independent lawsuit. Second, the lien acts as a proxy for payment from the client. Third, the lien is designed to protect the *value* of the attorney's services from dishonest clients, not to assert all claims the attorney may have against the client. Finally, attorneys are on notice that they must assert a charging lien in the underlying lawsuit. They cannot wait until later, unlike a subsequent suit for breach of contract.

{17} We now examine whether the charging lien asserted in this instance, including matters adjudicated in the hearing surrounding Computer One's objections to the charging lien, operate as a bar to Computer One's subsequent legal malpractice claim. Our discussion focuses first on whether Computer One's claim for legal malpractice was a compulsory counterclaim that Computer One was required to bring when it filed its objections to the charging lien. If the malpractice claim was not a compulsory counterclaim, we then discuss whether the malpractice lawsuit is nevertheless barred by the doctrine of res judicata.

## Compulsory Counterclaim

{18} Our Rules of Civil Procedure define a compulsory counterclaim as

any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does

not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Rule 1–013(A). For a claim to be compulsory, there must be parties which are "opposing." *Bennett*, 112 N.M. at 224, 814 P.2d at 92. "An 'opposing party' must be one who asserts a claim against the prospective counterclaimant in the first instance." *Id.* In other words, it is the adversarial nature of the relationship between the parties from the beginning "that . . . trigger[s] the compulsory counterclaim rule and its attendant res judicata effect." *Id.*

{19} This Court has previously rejected the preclusive effect of the compulsory counterclaim rule with respect to an attorney's *motion* for fees, but we have not yet addressed the compulsory counterclaim rule in the context of a *charging lien*. *Bennett*, 112 N.M. at 224, 814 P.2d at 92. In *Bennett*, the client obtained a court order compelling his attorney to withdraw. *Id.* at 222, 814 P.2d at 90. Subsequently, upon learning that his client had entered into a settlement agreement, the attorney filed a motion for fees in the underlying lawsuit and was paid pursuant to a settlement. *Id.* Five months later, the client filed a separate lawsuit against his former attorney for legal malpractice. *Id.* The attorney moved for summary judgment, arguing "that by his motion for attorney fees he was deemed, without objection, an intervenor in the action, and [the client's] claim for malpractice was a compulsory counterclaim to his motion." *Id.* at 224, 814 P.2d at 92.

{20} In a 3–2 decision, the majority of this Court held that it was "hesitant to accord res judicata effect to all issues and claims that might have been raised in response to a *motion* for fees," as opposed to an independent *complaint* for collection of fees. *Id.* While conceding that the motion for fees and the claim for legal malpractice were sufficiently related to arise out of the same transaction or occurrence, more was required to impose upon the client the preclusive effect of Rule 1–013(A). *Id.* The attorney and his former client were not ·"opposing parties" at the time of serving the "initial pleading," i.e., the motion for fees filed in the underlying

lawsuit. *Id.; see also* Rule 1–013(A) (defining a compulsory counterclaim as "any claim which at the *time of serving the pleading* the pleader has against any *opposing party*" (emphasis added)). That motion for fees did not establish the kind of "adversarial relationship" between client and attorney that would trigger Rule 1–013(A) and "its attendant res judicata effect." *See Bennett*, 112 N.M. at 224, 814 P.2d at 92.

{21} The positions taken by the majority and the dissent in *Bennett* reflect the positions taken in the present litigation by Computer One and the Firm. 112 N.M. at 224–26, 814 P.2d at 92–94. While the majority was unwilling to give preclusive effect to a motion for fees, the dissent took the opposite position and concluded that any claim of legal malpractice had to be asserted in response to the motion for fees. *Id.* at 224, 814 P.2d at 92 (majority opinion); *id.* at 225–26, 814 P.2d at 93–94 (Franchini, J., dissenting & Sosa, C.J., concurring in dissent). From this tension between the views of the majority and dissent, it is apparent that this Court has already entertained much of the debate presently before us. We discern no compelling reason to disturb settled doctrine.

{22} Our Court of Appeals attempted to distinguish *Bennett* by interpreting that opinion narrowly, almost limiting it to its facts. *Computer One, Inc.*, 2007–NMCA–079, ¶ 14, 141 N.M. 869, 161 P.3d 914. Instead of looking to the pleadings to see whether the charging lien made Computer One and the Firm "opposing parties," the Court looked to its own assessment of the degree of hostility or the extent of an adversarial relationship between the two. *Id.* Relying on its own assessment, the Court determined that Computer One was fairly on notice that all claims against the Firm needed to be filed at once in response to the charging lien. *Id.* ¶ 15. Because Computer One had "actively engaged in litigating the attorney fees," *id.* ¶ 14, the Court concluded that "Computer One was in an adversarial relationship with Defendants," *id.* ¶ 15. Therefore, the Court agreed with the Firm that Computer One's malpractice claim needed to be brought at that time as a compulsory counterclaim. *Id.*

{23} While we agree with the Court of Appeals to a limited extent, we are not persuaded to disregard our holding in *Bennett.* We agree that a court should consider the nature of the claim and the relationship that results from that claim. However, that analysis cannot be used to undercut what is clear from the pleadings. If the relationship between the parties is adversarial in nature *and* creates "opposing parties" within the meaning of Rule 1–013(A), then a party's failure to raise compulsory counterclaims will be fatal to its subsequent lawsuit. Both are required. Without an adversarial relationship, a party would not be on notice and "would not necessarily know that he or she would have to assert all defenses or claims against a party who has filed a motion." *Moffat v. Branch,* 2005–NMCA–103, ¶ 16, 138 N.M. 224, 118 P.3d 732 (citing *Bennett,* 112 N.M. at 224, 814 P.2d at 92); *Ortega, Snead, Dixon & Hanna v. Gennitti,* 93 N.M. 135, 140, 597 P.2d 745, 750 (1979) (" 'The controlling philosophy is that, *so far as fairness and convenience permit,* the various parties should be allowed and encouraged to resolve all their pending disputes within the bounds of the one litigation.' ") (emphasis added) (quoting *Scott v. United States,* 173 Ct.Cl. 650, 354 F.2d 292, 300 (1965)).

{24} However, pleading formalities are also important, and even of predominant significance. The preclusive effect of Rule 1–013(A) is premised on the formality of an "opposing party," because that very status fairly alerts litigants that all claims and counterclaims "aris[ing] out of the transaction or occurrence" must be brought at one time under penalty of waiver. *See* Rule 1–013(A). Conversely, ancillary participants in a lawsuit may find themselves at odds with each other, but not necessarily be "opposing parties."

{25} The notion of fair notice implicit in Rule 1–013(A) follows one's status as an opposing party. Nothing in that rule speaks about "degrees of hostility" or a "sufficiently adversarial" relationship, or other terms susceptible to a variety of interpretations, as a substitute for being an "opposing party." Nothing in Rule 1–013(A) would force a compulsory counterclaim on one who is not first a "party." Given the grave consequences of Rule 1–013(A), we think that rule is better served by a sense of certainty and predictability implicit in the notion that one must first be a "party" before one can be an "opposing party." And as this Court made clear in *Bennett,* an attorney does not transform his former client into either, merely by taking steps to secure attorney fees in the same underlying proceeding.

{26} On the other hand, if the Firm had wanted to file a separate suit for breach of contract against Computer One for its attorney fees, then under *Bennett* Computer One would have had to press its legal malpractice allegations simultaneously as a compulsory counterclaim. *See Brunacini v. Kavanagh,* 117 N.M. 122, 869 P.2d 821 (Ct.App.1993). The Firm chose not to do so.

{27} As discussed earlier, a charging lien is a limited equitable remedy. In this case, the Firm's charging lien stated that the lien was "against any and all proceeds of any money judgment, settlement fund, or other recovery *against Sandia Corporation.*" (Emphasis added.) It was not filed as an *in personam* action against the client. By filing the charging lien, the Firm not only sought the court's equitable enforcement of the lien, but also put Sandia on notice that there were creditors who should be paid from the settlement. If the Firm had not alerted Sandia to its claim for fees, the Firm risked forfeiting its right to recover under the charging lien. *See Thompson,* 112 N.M. at 467, 816 P.2d at 536. The Firm was required to put both the court and Sandia on notice that the Firm had an interest in the judgment. The Firm's choice to assert a charging lien against *the judgment* required Computer One to state its objections to the lien, and it did so. Nothing in Rule 1–013(A) required Computer One to do more.

{28} We are informed by the language of Rule 1–013(A) ("opposing parties"), the policy considerations presented by a majority of this Court in *Bennett* under very similar circumstances, and the limited nature of charging liens. It would take a powerful argument indeed for this Court to reverse the result of the debate that occurred in *Bennett* over fifteen years ago, in which the Court decided in favor of allowing the legal

malpractice claim to proceed. We are not persuaded to alter *Bennett,* and for the reasons already expressed by the majority therein, we hold that the compulsory counterclaim rule does not apply to an attorney's charging lien. To do otherwise might inadvertently "immunize lawyers from the inevitable consequence of their actions or inactions, [which] would most assuredly undermine the public trust and confidence that the legal profession certainly must desire and should strive to attain at all costs." *Collins ex rel. Collins v. Perrine,* 108 N.M. 714, 721, 778 P.2d 912, 919 (Ct.App.1989).

{29} Finally, the Firm's reliance upon the Court of Appeals' opinion in *Moffat* is misplaced. *Moffat* did not involve counterclaimants under Rule 1–013(A); there was no discussion of what constitutes an "opposing party" under that rule. *Moffat,* 2005–NMCA–103, ¶ 16, 138 N.M. 224, 118 P.3d 732. *Moffat* imposed an obligation solely on an attorney seeking fees to bring all his claims in one forum and not split them among several proceedings. *Id.* ¶ 21. To the extent *Moffat* raises questions of res judicata apart from the preclusive effects of Rule 1–013(A), we discuss those issues in the following section.

### Claim Preclusion

{30} Independent of any preclusive effects of Rule 1–013(A), the Firm argues that Computer One's malpractice claim is barred by the doctrine of res judicata. In the district court, the Firm contended that Computer One's objections to the charging lien were "in large part the same objections which are the subject of [the] legal malpractice suit." Because the objections were actually litigated, the Firm argued that "any further re-litigation of the same in [the malpractice] lawsuit is barred under the doctrine of res judicata and claim preclusion." The Court of Appeals apparently agreed, stating "[w]hen Computer One filed its objections to the attorney fees, it asserted claims arising out of Defendants' representation in the Sandia Corporation case. Claim preclusion required that Computer One bring all its claims arising out of this transaction at that time." *Computer*

*One, Inc.,* 2007–NMCA–079, ¶ 23, 141 N.M. 869, 161 P.3d 914.

{31} Res judicata is designed to "'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and ... prevent[ ] inconsistent decisions, [and] encourage reliance on adjudication.'" *Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 694, 652 P.2d 240, 244 (1982) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)), *overruled on other grounds by Universal Life Church v. Coxon,* 105 N.M. 57, 728 P.2d 467 (1986). New Mexico has adopted the transactional approach to determine whether two issues constitute the same claim for purposes of res judicata. *Id.* at 695, 652 P.2d at 245 (adopting the Restatement (Second) of Judgments §§ 24, 25 (1980)). "[U]nderlying the [transactional approach] is the need to strike a delicate balance between, on the one hand, the interests of the defendant and of the courts in bringing litigation to a close and, on the other, the interest of the plaintiff in the vindication of a just claim." Restatement (Second) of Judgments § 24 cmt. b, at 199.

{32} Though we agree that Computer One may not relitigate that which was already adjudicated in the charging lien proceeding, that principle is of no help to the Firm based on what actually transpired below. Having reviewed the record, it is quite clear to this Court that Computer One's objections to the charging lien *differed* markedly from its present malpractice claims. Computer One is not simply rehashing what it brought before the court in answer to the charging lien. Both the Firm and the Court of Appeals are mistaken on this point.

{33} Computer One's objections to the charging lien were limited to three arguments. First, as previously stated, Computer One objected on the basis that the Firm lacked authority to enter into the agreement. We agree that the issue of authority was already decided by the district court, and Computer One is barred from relitigating that claim. However, Computer One's remaining objections focused solely on the value of the Firm's services, not on the manner in which those services were performed. Computer One argued that the fees were too

high because the fees were based, in part, on work that the Firm promised to perform, yet never did. Computer One also argued that the fees were inflated because the Firm included work that was not part of the Sandia lawsuit. Finally, Computer One attacked the validity of the charging lien based on the attorney's fee agreement it had with the Firm.

{34} In contrast, Computer One's malpractice complaint alleges that the Firm "committed acts and were guilty of omissions which fell below the standard of care of attorneys practicing under similar circumstances." Significantly, in that complaint Computer One does not question the validity of the fees asserted in the charging lien, nor does Computer One seek to recover its fees paid to the Firm. Instead, Computer One requests damages for "the difference between the amounts finally paid in settlement in Sandia and the amount of recovery by settlement or judgment which should have been recovered in such amount as the jury finds reasonable." In other words, Computer One claims that it would have recovered more money from Sandia had the Firm done a better job of legal representation and particularly a better job of evaluating the true extent of its damages for purposes of settlement. Computer One made no such claim during its objections to the charging lien.

{35} As discussed previously, Computer One's objections to the charging lien reflect the limited nature of such a lien. Because only the value of the fees are at issue, a client's objections to a charging lien may well differ from a client's claim of legal malpractice. When objecting to a charging lien, a client may challenge the reasonableness of the value assigned to the attorney's fees, or the basis for that value. Similarly, a client may attack the validity of the fee agreement itself upon which the charging lien was based. In contrast, a client's claim of legal malpractice challenges the actual performance of the lawyer's duties, not the hourly rate the lawyer charged for those duties. *See Rancho del Villacito Condos., Inc. v. Weisfeld,* 121 N.M. 52, 56, 908 P.2d 745, 749 (1995) ("[A] plaintiff must show, usually through expert testimony, that his or her attorney failed to use the skill, prudence, and diligence of an attorney of ordinary skill and capacity." (quoted authority omitted)). Because the objections to the charging lien were distinct from the claim asserted in Computer One's malpractice lawsuit, we reject the Firm's argument that the issues in Computer One's malpractice claim were necessarily litigated below.

{36} Even if we were to assume, without deciding, that Computer One could have raised its malpractice claim in response to the charging lien, a questionable proposition at best, this would not change our result in this particular case.[3] Computer One disclosed during the February 2002 disbursement hearing that it was considering a malpractice claim against the Firm. The Firm responded that "if Computer One chooses to sue us later for malpractice for whatever reason, they would still be able to do it. The present situation has nothing to do with the pending proceedings." Having been alerted to Computer One's potential malpractice claim, and affirmatively acknowledging that the charging lien was not related to the malpractice claim, the Firm cannot now change course and claim an opportunity for Computer One to do the very thing it urged Computer One *not* to do below.[4]

---

3. The Court of Appeals concluded that Computer One's objections to the charging liens and its malpractice claim would form a convenient unit for trial. *Computer One, Inc.,* 2007–NMCA–079, ¶ 19, 141 N.M. 869, 161 P.3d 914. We question, without deciding, whether a new claim of professional negligence, customarily accompanied by a demand for a jury trial, fits conveniently into the context of an attorney charging lien, a limited equitable action, usually filed at the very end of the initial litigation as an ancillary matter. In this case, Computer One did request that a jury decide its legal malpractice claim. "Only under the most imperative circumstances can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Evans Fin. Corp. v. Strasser,* 99 N.M. 788, 790, 664 P.2d 986, 988 (1983).

4. These representations by the Firm could be said to distinguish this case from *Moffat* in which no one urged the attorney to bring a separate action for fees. However, we must acknowledge that the implications of our opinion may call into question the Court of Appeals' holding in *Moffat.* In *Moffat,* the Court concluded that an attorney's subsequent breach of contract lawsuit for fees

{37} Because we conclude that Computer One is not precluded from bringing its malpractice claim, we remand to the district court. On remand, however, Computer One is precluded from attempting to relitigate any of the issues actually litigated during the underlying Sandia lawsuit related to the charging lien.

**CONCLUSION**

{38} We reverse the Court of Appeals and the district court and remand this case for proceedings consistent with this Opinion.

{39} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and CHARLES W. DANIELS, Justices.

was barred by the federal court's earlier determination that the attorney charging lien was defective as a matter of law. 2005–NMCA–103, ¶¶ 3, 26, 138 N.M. 224, 118 P.3d 732. The Court rejected the attorney's argument, made in reliance on *Sowder*, that a charging lien is a limited action with limited preclusive effect, a view endorsed in today's Opinion. *Id.* ¶ 22. We have not, however, been asked to consider the holding of *Moffat* and do not resolve that question in this Opinion.