This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-36701**

**SOPURKH KAUR KHALSA, SHAKTI PARWHA KAUR KHALSA, and EK ONG KAR KAUR KHALSA, Trustees of the Yogi Bhajan Administrative Trust,**

Plaintiffs-Appellees,

v.

**INDERJIT KAUR PURI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Sanders & Westbrook, PC
Maureen A. Sanders
Albuquerque, NM

Wray Law, PC
Katherine Wray
Albuquerque, NM

for Appellees

The Bowles Law Firm
Jason Bowles
Albuquerque, NM

The Soni Law Firm
Surjit P. Soni
Pasadena, CA

for Appellant

**MEMORANDUM OPINION**

**IVES, Judge**.

**{1}**     In a dispute about the parties' competing claims to funds that Defendant was awarded in an arbitration with a third party, the district court determined that Plaintiffs' writ of garnishment had priority over defense counsel's claimed charging lien. Defendant argues that (1) the district court did not have authority to determine priority between Plaintiffs' garnishment and defense counsel's charging lien, and (2) the district court erred in concluding that the garnishment had priority. Unpersuaded, we affirm.

## BACKGROUND

**{2}**     This is Defendant's fourth appeal to this Court in this litigation, which is now more than thirteen years old. Plaintiffs, the trustees of the Yogi Bhajan Administrative Trust, sued Defendant, Yogi Bhajan's widow, seeking a declaratory judgment that Defendant is not entitled to any distributions from the trust. The district court dismissed Plaintiffs' complaint, but the case proceeded to trial on Defendant's counterclaims. Plaintiffs prevailed in defending against Defendant's counterclaims, and the district court ordered Defendant to pay attorney fees and costs. This Court affirmed. *Khalsa v. Puri*, 2015-NMCA-027, 344 P.3d 1036.[1] Plaintiffs have yet to recover any of their attorney-fees award. With interest, Defendant's debt under the judgment now exceeds $1 million.

**{3}**     Plaintiffs and Defendant are each owners of a one-half interest in intellectual property that was licensed to a third party under an Exclusive Licensing Agreement (ELA). The ELA includes a provision requiring "dispute[s] with respect to [the ELA] . . . [to] be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules" (AAA Rules). After Plaintiffs and Defendant prevailed against the third party in an arbitration proceeding conducted in accordance with the ELA, the arbitrator entered an order directing the third party to pay its remaining funds into a law firm's trust account. By stipulation of the parties, this order provided that the arbitrator would "retain jurisdiction in order to resolve any remaining disputes and issues remaining in [the] arbitration between [Defendant] and [Plaintiffs], including but not limited to, distribution of [the third party's] remaining funds, and any claims for attorney . . . fees and costs."

**{4}**     The third party paid $504,565.27 into the trust account pursuant to the arbitrator's order. Hoping to recover some of the attorney fees they have been awarded in this case, Plaintiffs sought to garnish Defendant's $252,282.63 share of the funds recovered. However, Defendant filed a notice of lien in the arbitration proceeding in which she claimed that her attorney has a charging lien on the arbitration award that takes priority over Plaintiffs' garnishment. The district court ruled that the garnishment has priority, and Defendant appealed.

---

[1]Defendant also filed an appeal specific to the award of attorney fees, and this Court affirmed that award in a separate, memorandum opinion. *Khalsa v. Puri*, No. 33622, mem. op. (N.M. Ct. App. Apr. 14, 2015) (non-precedential).

**{5}** Defendant argues that the district court lacked the authority to decide whether it could determine priority because the arbitrator had exclusive authority to do so. Our district courts have the authority to decide arbitrability—whether a particular dispute is subject to arbitration—"unless there is clear and unmistakable evidence that the parties decided otherwise under the terms of their arbitration agreement." *Felts v. CLK Mgmt., Inc.*, 2011-NMCA-062, ¶ 17, 149 N.M. 681, 254 P.3d 124. Because it was unclear to us from the original briefing whether Defendant's argument was that the ELA was clear and unmistakable evidence that the parties to this appeal intended to delegate questions of arbitrability, we requested supplemental briefing on that issue and specifically asked the parties to address "doctrines under which a non-signatory may be bound by an agreement to arbitrate[.]" In her supplemental brief, Defendant concedes both that the priority dispute is not one within the scope of the ELA and that the ELA "[did] not impose an agreement among the [parties] to arbitrate any disputes they may have between them." Instead, Defendant argues, as we now understand she did in her brief in chief and reply, that the arbitrator had exclusive authority to resolve the priority dispute because the parties stipulated to the arbitrator's retention of jurisdiction "in order to resolve any . . . disputes and issues remaining in [the] arbitration." Because the parties are not signatories to the ELA, we agree that the arbitration provision within the ELA does not apply to the present dispute. *See Edward Family Ltd. P'ship v. Brown*, 2006-NMCA-083, ¶ 10, 140 N.M. 104, 140 P.3d 525 ("As a general rule, an arbitration clause is only binding on the parties to the underlying agreement and not on third parties."); *cf. In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 384 (6th Cir. 2020) (holding that the defendants could not compel arbitration under a limited warranty associated with their goods because "the parties did not form an agreement to arbitrate" when the plaintiffs were "distributors" of those goods and "not 'original retail purchasers' [covered by] the terms of the arbitration provision" of the limited warranty). Therefore, our discussion of whether the district court could determine the arbitrability of the dispute is limited to whether the parties clearly and unmistakably delegated questions of arbitrability by stipulating to the arbitrator's retention of jurisdiction.

## DISCUSSION

### I. The District Court Had the Authority to Determine Priority Between Plaintiffs' Writ of Garnishment and Defense Counsel's Charging Lien

**{6}** Defendant argues that the district court lacked authority to determine priority because (1) the arbitrator had exclusive authority to do so under the parties' stipulation to the arbitration award, (2) the arbitrator had exclusive authority as the decisionmaker in the case that created Defendant's entitlement to the funds in issue, and (3) the district court needed to confirm the arbitration award before the award could be garnished. For the reasons that follow, we conclude that Defendant's first and second arguments are unpersuasive, and we conclude that Defendant failed to preserve the third. Defendant's preserved arguments present issues of subject matter jurisdiction and the applicability and construction of a contract requiring arbitration,[2] both of which we review de novo.

---

2We assume without deciding that, as Defendant urges, the parties formed an arbitration agreement by stipulating to the arbitration award and the arbitrator's attendant retention of jurisdiction. *See Owen v.*

*Best v. Marino*, 2017-NMCA-073, ¶ 19, 404 P.3d 450 ("We review questions of subject matter jurisdiction de novo."); *Felts*, 2011-NMCA-062, ¶ 14 ("[W]hether the parties have agreed to arbitrate presents a question of law, and we review the applicability and construction of a contractual provision requiring arbitration de novo." (internal quotation marks and citation omitted)). We address each argument in turn.

## A. The Parties' Stipulation to the Arbitration Award Did Not Grant the Arbitrator Exclusive Authority Over This Dispute

**{7}** "New Mexico district courts are courts of general jurisdiction[.]" *State ex rel. Foy v. Austin Cap. Mgmt., Ltd.*, 2015-NMSC-025, ¶ 7, 355 P.3d 1 (internal quotation marks and citation omitted). They "ha[ve] jurisdiction over all matters not expressly consigned to other courts." *Marchman v. NCNB Tex. Nat'l Bank*, 1995-NMSC-041, ¶ 27, 120 N.M. 74, 898 P.2d 709. "[I]n the absence of proof to the contrary," we presume the jurisdiction of the district court. *Id.* "[A]rbitration agreements are contracts enforceable by the rules of contract law." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 16, 296 P.3d 478. "The terms of the agreement define the scope of . . . jurisdiction [and the] conditions, limitations[,] and restrictions on the matters to be arbitrated." *Id.* (alteration, internal quotation marks, and citation omitted). The district court has the authority to determine whether a particular dispute is subject to arbitration "unless there is clear and unmistakable evidence that the parties decided otherwise under the terms of their arbitration agreement." *Felts*, 2011-NMCA-062, ¶ 17. In construing an arbitration agreement, courts must apply its plain meaning, and an arbitration agreement "require[s] broad interpretation" when it is "drafted with broad strokes." *Id.* ¶ 22.

**{8}** The plain language of the arbitrator's retention of jurisdiction, even interpreted broadly, does not constitute clear and unmistakable evidence that the parties agreed to vest the arbitrator with the exclusive authority to determine the arbitrability of this dispute. In *Felts*, this Court concluded that the parties had divested the district court of its jurisdiction to determine the scope of an arbitration agreement because the "sweeping" plain language of the agreement stated that the parties agreed to arbitrate "any and all claims, disputes[,] or controversies . . . including disputes as to the matters subject to arbitration." 2011-NMCA-062, ¶ 23 (emphasis, internal quotation marks, and citation omitted). Here, by stipulating to the arbitration award, the parties agreed that the arbitrator would "retain jurisdiction [over] any . . . disputes and issues remaining in [the] arbitration between [Defendant] and [Plaintiffs], including but not limited to, distribution of [the third party's] remaining funds, and any claims for attorney . . . fees and costs." Although the agreement broadly applies to "any . . . disputes and issues remaining," it contains no clause delegating the determination of whether an issue is subject to arbitration. Absent "proof to the contrary," *Marchman*, 1995-NMSC-041, ¶ 27, that is "clear and unmistakable," *Felts*, 2011-NMCA-062, ¶ 17, we conclude that the parties did not agree to have the arbitrator determine whether garnishment of the arbitration award

---

*Burn Constr. Co.*, 1977-NMSC-029, ¶¶ 13, 15, 90 N.M. 297, 563 P.2d 91 (recognizing that a stipulated judgment "is a contract between the parties" that courts must "interpret and enforce" according to its "language and terms" (internal quotation marks and citation omitted)).

was subject to arbitration and that the district court's exercise of jurisdiction over that matter was proper.[3]

**{9}** Having concluded that the district court had the authority to determine the arbitrability of the priority dispute, we further hold that the district court did not err by deciding that the dispute was not subject to arbitration. "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010). This rule "flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration [where] the problem at hand is the construction of the contract language[.]" *Clay v. N.M. Title Loans, Inc.*, 2012-NMCA-102, ¶ 7, 288 P.3d 888. Yet, "construction of arbitration provisions proceeds along typical contract interpretation avenues[,]" *id.* ¶ 8, and it is rudimentary that, in construing contracts, "[w]e consider the plain language of the relevant provisions . . . [because it is] objective evidence of the parties' mutual expression of assent." *H-B-S P'ship v. Aircoa Hosp. Servs., Inc.*, 2005-NMCA-068, ¶ 19, 137 N.M. 626, 114 P.3d 306. Thus, unless the language of the parties' agreement at least arguably indicates that the parties have agreed to arbitrate a particular issue, a court cannot compel the parties to resolve that issue through arbitration. *See generally Heimann v. Kinder-Morgan CO2 Co., L.P.*, 2006-NMCA-127, ¶ 25, 140 N.M. 552, 144 P.3d 111 ("The presumption in favor of arbitration cannot operate to compel arbitration of a particular claim in the absence of an agreement to arbitrate [that] particular claim.").

**{10}** We conclude that the district court correctly decided that the parties' priority dispute was not subject to arbitration. Under the plain language of the parties' agreement, the arbitrator "*retain*[*ed*]" jurisdiction over those "disputes and issues *remaining* in [the] arbitration." (Emphases added.) The dispute at issue in this appeal did not fall within the class of disputes that the parties were obligated to resolve through arbitration with the third party under the ELA. And our analysis is unaffected by the arbitration award's specific reference to the "distribution" of the third party's funds and "attorney . . . fees and costs." The parties to this appeal may, in stipulating to this language, have agreed to arbitrate whether a party to the arbitration would be entitled to have another party pay its attorney fees and how any funds belonging to the third party would be divided between the parties to this appeal. But nothing in the award suggests that the parties agreed to have the arbitrator determine whether Plaintiff's attorney was

---

3Noting that the AAA Rules vest arbitrators with "the power to rule on [their own jurisdiction]," Defendant argues that the district court "improper[ly] . . . usurp[ed] the arbitrator's jurisdiction regarding an arbitrable issue." Defendant thus appears to argue that the AAA Rules deprived the district court of the power to determine the scope of arbitrable issues pursuant to its original jurisdiction. However, as discussed above, the plain language of an arbitration agreement prescribes whether an arbitrator has the authority to determine the scope of an arbitration agreement. Because the parties' stipulation to the arbitrator's *retention* of jurisdiction does not include a provision incorporating the AAA Rules, *cf. Brennan v. Opus Bank*, 796 F.3d 1125, 1128-30 (9th Cir. 2015), the parties did not clearly and unmistakably agree to arbitrate the arbitrability of disputes like this one, and the AAA Rules have no bearing on our decision.

entitled to deduct his fee from the funds recovered through the arbitration before Defendants could reach those funds to satisfy an outstanding judgment awarded in an entirely separate proceeding. We therefore affirm the district court's refusal to compel arbitration of the dispute underlying this appeal.

**B.      The Arbitrator Did Not Have Exclusive Authority as the Issuer of the Arbitration Award**

**{11}**    Defendant next argues that, as the decisionmaker in the case that created Defendant's entitlement to the funds in issue, the arbitrator had exclusive authority to determine priority between Plaintiffs' garnishment and defense counsel's charging lien. Defendant cites *Computer One, Inc. v. Grisham & Lawless, P.A.* for the proposition that New Mexico precedent has "put attorneys on notice to file the charging lien and enforce it 'in the court in which the underlying suit is filed, not in an independent action.' " 2008-NMSC-038, ¶ 14, 144 N.M. 424, 188 P.3d 1175 (quoting *Thompson v. Montgomery & Andrews, P.A.*, 1991-NMCA-086, ¶ 16, 112 N.M. 463, 816 P.2d 532). That rule, however, pertains to the procedure for attaching a charging lien to a judgment. Neither *Computer One* nor *Thompson* stands for the proposition that, once an attorney has attached a charging lien to a judgment, the judgment is immune from garnishment in an independent action. *See Philipbar v. Philipbar*, 1999-NMCA-063, ¶ 13, 127 N.M. 341, 980 P.2d 1075 (noting that a charging lien "remains subject to the court's equitable discretion for its enforcement"); *Jemko, Inc. v. Liaghat*, 1987-NMCA-069, ¶ 20, 106 N.M. 50, 738 P.2d 922 ("The test as to whether funds in the hands of another are subject to garnishment is whether the defendant in the original action could recover such funds directly against the garnishee."). Because Defendant cites no other authority in support of her argument on this issue, we do not consider it further. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (declining to address inadequately developed arguments).

**C.      Defendant Did Not Preserve the Issue of Whether the Arbitration Award Needed to Be Confirmed Before It Could Be Garnished**

**{12}**    Defendant's final argument is that the district court did not have the power to garnish the arbitration award because the award had not yet been confirmed in the district court. Defendant contends that she first raised the issue in her objection to and claim of exemption from garnishment. For an issue to be preserved for review on appeal, "it must appear that a ruling or decision by the trial court was fairly invoked." Rule 12-321(A) NMRA. In her objection to garnishment, Defendant cited an unreported Michigan Court of Appeals Case, *Guardian Sales Corp. v. John Michaels Enters., Inc.*, No. 233433, 2003 WL 327667 (Mich. Ct. App. Feb. 11, 2003), to support her argument that her counsel's charging lien had priority over Plaintiffs' garnishment because it was first in time. The citation thus appeared in the context of an argument that did not challenge the district court's jurisdiction to garnish the arbitration award. Defendant cited the Michigan case to support her contention that "[o]ther courts have recognized that a writ of garnishment is subordinate to an attorney's lien." In an explanatory parenthetical, Defendant quoted the statement of the Michigan Court of Appeals that, "[s]ince the writ

of garnishment could not have attached before entry of the order confirming the arbitration award, [the attorney's] lien was first in time and has priority." *Id.* at \*3. Not least because the citation appeared in the context of an argument that did not challenge the district court's jurisdiction to garnish the arbitration award, we do not believe that this passing reference to the reasoning of the Michigan Court of Appeals was sufficient to invoke a ruling of the district court on the issue of whether the arbitration award needed to be confirmed before it could be garnished.

**{13}** Defendant first questioned the district court's ability to garnish an unconfirmed arbitration award in a motion to stay the district court's ruling on priority pending appeal. In *Muse v. Muse*, this Court held that an argument in the appellant's motion to stay was insufficient to preserve the issue for review on appeal because "[n]othing in or about [the] motion would have put the district court on alert that [the appellant] was seeking any reconsideration of the merits[.]" 2009-NMCA-003, ¶ 64, 145 N.M. 451, 200 P.3d 104. Here, the district court had not ruled on its jurisdiction to garnish an unconfirmed arbitration award because such a ruling had not been invoked. Therefore, nothing in Defendant's motion to stay, or her reply in support of the motion, could have alerted the district court that Defendant was seeking reconsideration of the merits of a ruling on that issue. *Cf. id.* ¶ 64 (reasoning that, with his motion to stay, the appellant "was merely advancing arguments against enforcement of the [district court's] orders so that he could preserve assets pending appeal").

## II.      The District Court Did Not Abuse Its Discretion in Determining Priority

**{14}** Defendant argues that the district court abused its discretion by giving priority to Plaintiffs' garnishment because (1) the charging lien was first in time, and (2) the equities favored giving priority to the charging lien.[4] We disagree.

**{15}** "[I]t is within the trial court's equitable jurisdiction, based on a balancing of the facts and equities of each case, to determine whether justice and fairness demand" that a charging lien "be subordinated to or be given priority over[,]" *Sunwest Bank of Roswell v. Miller's Performance Warehouse, Inc.*, 1991-NMSC-085, ¶ 14, 112 N.M. 492, 816 P.2d 1114, a "conflicting claim[.]" *Id.* ¶ 7. Because it is subject to the district court's discretion, *id.* ¶ 8, we review the court's balancing of the facts and equities for an abuse of discretion. "The district court abuses its discretion when its decision is contrary to logic and reason." *Dart v. Westall*, 2018-NMCA-061, ¶ 32, 428 P.3d 292 (alteration, internal quotation marks, and citation omitted). We will not disturb the district court's decision unless it "exceeds the bounds of all reason or is arbitrary, fanciful or

---

[4]Defendant also claims that, because her counsel had asserted a charging lien, the arbitration award was "exempt" from garnishment. New Mexico's garnishment procedure allows a debtor to claim an exemption for certain kinds of personal property. *See* Rule 1-065.2(G) NMRA (providing that a judgment debtor may claim a statutory exemption); *see also* Form 4-809 NMRA (listing exemptions). Defendant has not argued for the applicability of a particular statutory exemption, and, to the extent she contends an attorney's charging lien is equivalent to a statutory exemption, that argument cannot be squared with New Mexico law. *See Philipbar*, 1999-NMCA-063, ¶ 13.

unreasonable." *Mayeux v. Winder*, 2006-NMCA-028, ¶ 34, 139 N.M. 235, 131 P.3d 85 (internal quotation marks and citation omitted).

**{16}** In its order on priority, the district court observed that years had passed since Plaintiffs were awarded attorney fees, and Plaintiffs had yet to recover anything from Defendant. The district court noted that, for his part, defense counsel chose to represent Defendant throughout the arbitration knowing that Defendant was a judgment debtor in this case. *See Sunwest Bank*, 1991-NMSC-085, ¶ 12 (enumerating, among a list of factors relevant to priority between the conflicting claims of a judgment creditor and an attorney with a charging lien, whether the attorney knew of the judgment against the client-debtor at the time that the attorney and client entered a fee agreement). The district court also indicated in its order on priority that, without any evidence of Defendant's financial status,[5] it was unable to conclude that defense counsel's claimed charging lien was necessary to protect him from a client who "sought to evade payment for the services which enabled [the client] to recover [the client's] demand." *Sunwest Bank*, 1991-NMSC-085, ¶ 7.

**{17}** As a threshold matter, we address Plaintiffs' argument that defense counsel does not have an enforceable charging lien. The validity of a charging lien is a question of law, which we review de novo. *Sowder v. Sowder*, 1999-NMCA-058, ¶ 7, 127 N.M. 114, 977 P.2d 1034. A valid charging lien requires that (1) there exist a valid fee agreement between attorney and client; (2) there "be a judgment, or 'fund,' . . . result[ing] from the attorney's services" in the client's favor; (3) the attorney give "clear and unequivocal" notice, to the "appropriate parties[,]" of the attorney's intent to assert a lien; and (4) the attorney do so before the award is distributed. *Computer One*, 2008-NMSC-038, ¶ 14. In its order on priority, the district court stated that it was unknown whether Defendant and her counsel had a valid fee agreement that entitled Defendant's counsel to assert a lien. Likewise, we cannot determine from the record whether there exists an agreement pursuant to which Defendant's counsel is entitled to a fee, and we are thus unable to conclude that defense counsel has a valid charging lien.

**{18}** We need not address this issue further because, notwithstanding the validity or non-validity of the lien, we are not persuaded that we should reverse. Defendant argues that the district court's ruling was erroneous because her attorney's charging lien was first in time. Assuming for the sake of argument that Defendant's timing argument is correct, that does not aid Defendant. "An attorney may, at the commencement of legal services, indicate an intention to assert a charging lien in the event of nonpayment of fees, but the lien remains subject to the court's equitable discretion for its enforcement." *Philipbar*, 1999-NMCA-063, ¶ 13 (rejecting the notion that, by recording a charging lien against the title to real property, an attorney "creates a binding priority vis-à-vis other

---

[5]The district court had ordered Defendant to submit proof of her financial status. Defendant appealed the order, and this Court determined that it was not a final, appealable order. *Khalsa v. Puri*, No. 34911, mem. op. (N.M. Ct. App. Oct. 3, 2016) (non-precedential). In denying Defendant's motion to stay, the district court indicated that Defendant never complied with its discovery order. And we find no evidence in the record that Defendant submitted proof of her financial status after this Court dismissed her earlier appeal.

claims pending before the court"). Hence, the timing of the imposition of a charging lien versus that of service of a writ of garnishment is not dispositive of the priority question. And the reasoning contained in the district court's order demonstrates that the court ruled in Plaintiffs' favor only after fulfilling its obligation to weigh the individual equities of this case. *See generally Sunwest Bank*, 1991-NMSC-085, ¶¶ 12, 14 (recommending five factors "for weighing the equities and specific facts of each case" and providing that it is within the district court's discretion to determine "which factors to weigh in appraising the unique and specific equities involved"). Unpersuaded by Defendant's argument that the timing of the parties' competing claims to the funds shifts the balance in her favor, we conclude that the district court's emphasis on Defendant's longstanding indebtedness to Plaintiffs—and the lack of evidence of her indebtedness to her attorney—was not contrary to logic and reason and, thus, not an abuse of discretion.

**CONCLUSION**

**{19}** We affirm the district court's judgment and remand for enforcement of Plaintiffs' writ of garnishment.[6]

**{20} IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**BRIANA H. ZAMORA, Judge**

**SHAMMARA H. HENDERSON, Judge**

---

6Presented with no argument to support a contrary conclusion, we have decided this case on the assumption that Defendant could properly challenge the garnishment of the funds at issue on the ground that some portion of those funds should be used to pay her attorney.