2008-NMCA-135

193 P.3d 599

**Jason ADAMS, Plaintiff–Appellant,**

v.

**Wesley C. KEY, Defendant–Appellee.**

**No. 27,930.**

Court of Appeals of New Mexico.

Aug. 19, 2008.

Klipstine & Hongmann, L.L.C., James W. Klipstine, Jr., Hobbs, NM, for Appellant.

Henninghausen & Olsen, L.L.P., A.J. Olsen, Kenneth B. Wilson, Jennings & Jones, L.C., A.D. Dirk Jones, Roswell, NM, for Appellee.

## OPINION

VIGIL, Judge.

{1} Plaintiff (Adams) appeals from the district court order dismissing Adams' suit against Defendant (Key) with prejudice. The district court determined that the issues raised in this case by Adams' complaint (the Adams complaint), should have been raised in prior litigation brought by Key against Adams (the Key complaint) as compulsory counterclaims under Rule 1–013 NMRA. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. The Key Complaint

{2} In January 2006, Key and his wife filed the Key complaint against Adams in the Chaves County District Court seeking a de-

claratory judgment to determine the ownership of livestock located on the Gramma Valley Ranch. The Key complaint was verified under oath by Key and his wife.

{3} The verified complaint states that in October 2002, Key leased the Gramma Valley Ranch from his father for the purpose of conducting a cattle ranching operation. In January 2003, Key obtained financing from Production Credit Association of Southern New Mexico (PCA) to purchase cattle to stock the ranch and granted PCA a security interest in the cattle. The total purchase price for the cattle Key bought to stock the ranch was approximately $260,000, and the cattle were branded on the right shoulder with the Key brand that Key had registered with the New Mexico Livestock Board. The following month, in February 2003, Key and Adams entered into an agreement (the Agreement) which was attached as an exhibit to the complaint. The Agreement is handwritten and in its entirety states:

> Received from Jason Adams [$6700] cash monies to be used for operation of Gramma Valley Ranch in 2003 (Feed Cost). Cost of operation of Ranch is to be split equal between Jason Adams & Collins Key. Profits if any to be split equal between Jason Adams & Collins Key.

The complaint adds:

> It was further anticipated between the parties that the parties would equally contribute the labor and financial resources necessary to operate the Gramma Valley Ranch in accordance with generally accepted ranching practices and that there would be no distributions between the parties for at least five (5) years.

The complaint alleges that Key and his wife used the proceeds from the sale of the 2003 and 2004 calf crop to pay the annual installment owed to PCA and for other operational expenses associated with the Gramma Valley Ranch, including the annual lease payment.

{4} In 2005, according to the Key complaint, without Key's approval or consent, Adams branded a portion of the calf crop (approximately 165 head) on the left jaw with the Adams brand that Adams had registered with the New Mexico Livestock Board. These cattle were subsequently rebranded with the Key brand, and the remaining 2005 calf crop (approximately fifty head) remained unbranded. Further, according to the Key complaint, in late spring of 2005, Adams purchased ten head of Corriente cattle (the Corriente cattle), placed them at the ranch, and, without Key's knowledge or consent, branded them with the Key brand. The Corriente cattle were purchased for $6000, with Adams contributing $4500 and Key contributing $1500. According to the Key complaint, Adams advised employees at the New Mexico Livestock Board that Adams "is the owner of all or a portion of the cattle" situated at the ranch. "[A]s a result of the actions taken by ... Adams," the Key complaint asserted that the "New Mexico Livestock Board is unwilling to issue a permit authorizing the transport of that portion of the 2005 calf crop which [Key] desire[s] to sell."

{5} The Key complaint alleged that Adams "claims some right, title or interest in and to the cattle situated on the Gramma Valley Ranch, or some portion thereof" and that "[t]here now exists a dispute between [Key] and Adams as to the ownership of the cattle located at the Gramma Valley Ranch."

{6} Adams was properly served, but he failed to enter an appearance, file an answer, or otherwise respond to the Key complaint. Consequently, a default judgment was entered against Adams by the district court in March 2006. The judgment establishes (1) that Key and his wife are "the owners of an undivided one-fourth interest in and to the Corriente Cattle and their offspring, subject only to a purchase money security interest in favor of [PCA]"; (2) that Key and his wife "are the owners of all other cattle presently located at the Gramma Valley Ranch, subject only to a purchase money security interest in favor of [PCA]"; and (3) that "Adams has no ownership interest in any cattle located at the Gramma Valley Ranch, other than an undivided [three-fourths] ownership interest in the Corriente Cattle and the offspring of the Corriente Cattle."

## II. The Adams Complaint

{7} In December 2006, Adams filed the Adams complaint against Key in the Chaves

County District Court. The Adams complaint alleged that in 2003, Adams and Key "entered into a Partnership agreement to manage and operate a ranch known as the Gramma Valley Ranch." The "partnership agreement" referred to is the same handwritten Agreement that was the subject of the Key complaint, and a copy was attached to the complaint as Exhibit A.

{8} The Adams complaint asserts that "[t]he partners operated the Gramma Valley Ranch, buying and selling cattle as a partnership for the mutual benefit of the partners." The complaint further asserts that "[Adams] contributed money as well as goods and services to the ranching endeavor for the benefit of the partnership." Adams asks that "the partnership" be dissolved and the assets distributed; that Key account to the partnership for any property, profit, or benefit accruing to the partnership; that Key pay damages for breach of fiduciary duty to Adams for converting partnership assets and opportunities to his own use and benefit; and that Key compensate Adams and pay punitive damages for willful, intentional, and bad faith breach of the partnership agreement.

### III. The Motion for Summary Judgment

{9} Key filed a motion for summary judgment in the Adams case. He attached a copy of the Key complaint which included the handwritten Agreement and a copy of the default judgment entered against Adams in the Key case. Key stated as an undisputed material fact that "[Adams] did not assert a counter claim in [the Key case] alleging a partnership or a right to an accounting or damages." Key asserted he was entitled to summary judgment because "[i]n this case the doctrine of res judicata which includes [R]ule 1–013, mandates that all claims which were, or should have been litigated previously are barred."

{10} Adams admitted that he did not assert a counterclaim to the Key complaint, stating that "the only relief sought in [the Key complaint] was a declaration of ownership of cattle not addressing the material issues raised by this claim." Adams asserted that "the issues of accounting, dissolution of partnership, breach of fiduciary duty and breach of contract," the "existence of a partnership," and the extent and nature of the partnership were not decided in the prior action and therefore remain material issues of fact, precluding summary judgment. Adams claimed that his "action to dissolve a partnership after accounting and for damages for breach of contract and breach of fiduciary duty was not a compulsory counterclaim to a prior action by [Key] to declare ownership to one group of cattle."

{11} Key replied that the Adams complaint is barred because it arises out of the same transaction or occurrence as the Key complaint and therefore constitutes a compulsory counterclaim under Rule 1–013(A). After a hearing, the district court granted Key's motion for summary judgment and dismissed the Adams complaint with prejudice. Adams appeals.

### DISCUSSION

{12} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "We review these legal questions de novo." *Id.* "Similarly, we review de novo the district court's determination of whether our compulsory counterclaim rule, Rule 1–013(A), or res judicata bars a party's claims." *Computer One, Inc. v. Grisham & Lawless P.A.*, 2008–NMSC–038, ¶ 11, 144 N.M. 424, 188 P.3d 1175.

{13} Adams contends that there exist material issues of fact concerning the nature and scope of the partnership agreement between Adams and Key that preclude summary judgment. Adams asserts that the Key case did nothing but resolve the ownership of a group of cattle and that "[n]o issue was raised concerning the on-going nature of the relationship nor other property or assets the partnership owned." Adams acknowledges that both suits have the same origin, "the relationship of the parties," but asserts they "were clearly not of a common subject matter." Adams quotes paragraphs from the Key complaint, which Adams contends demonstrates that the relationship of the parties was a partnership with assets other than the cattle and a sharing of profits over and above

ownership of the cattle at issue in the Key complaint. Adams contends that additional facts exist to establish the existence of a partnership and that Adams is due an accounting and distribution of assets.

{14} Key contends that Adams improperly argues that general principles of res judicata do not bar his claims and that Adams ignores the issue on appeal, which is whether the allegations contained in the Adams complaint must have been brought as compulsory counterclaims to the Key complaint under Rule 1–013(A). Key also argues that there is a logical relationship between the two actions because the Agreement is the "common origin" for both cases, and the operation of the ranch is the "common subject matter." Key further contends that New Mexico public policy favors an end to litigation and that the principles of judicial economy forbid the piecemeal splitting of actions and defenses that Adams is attempting in this case. *See Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces*, 105 N.M. 433, 435, 733 P.2d 1316, 1318 (1987) (recognizing that "[t]he purpose of Rule 1–013 is to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters" and that "Rule 1–013 is particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint" (internal quotation marks and citation omitted)).

{15} We agree with Key that the issue before us is not whether the Adams complaint is barred by general principles of res judicata. The question before us is whether the Adams complaint sets forth compulsory counterclaims that should have been made in response to the Key complaint. If the Adams complaint sets forth compulsory counterclaims that should have been made in response to the Key complaint, those claims are barred by Rule 1–013(A) irrespective of res judicata principles. The failure of a party to raise a compulsory counterclaim in a prior suit is fatal to bringing that claim in a subsequent suit. *See Slide–A–Ride of Las Cruces, Inc.*, 105 N.M. at 436, 733 P.2d at 1319 (stating that compulsory counterclaims

that were not asserted and litigated in a prior action were deemed abandoned and could not be asserted in a later action). We therefore proceed to determine whether Rule 1–013 applies.

{16} Rule 1–013(A) provides:

A pleading *shall* state as a counterclaim *any claim* which at the time of serving the pleading *the pleader has against any opposing party*, if it *arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

(Emphasis added.)

{17} Rule 1–013(A) is triggered by its "opposing party" provision. *Computer One, Inc.*, 2008–NMSC–038, ¶ 18, 144 N.M. 424, 188 P.3d 1175 (stating that there must be parties that are "opposing" for a claim to be compulsory). Quoting *Bennett v. Kisluk*, 112 N.M. 221, 224, 814 P.2d 89, 92 (1991), the *Computer One, Inc.* Court described an "opposing party" as follows: "An 'opposing party' must be one who asserts a claim against the prospective counterclaimant in the first instance. In other words, it is the adversarial nature of the relationship between the parties from the beginning that ... trigger[s] the compulsory counterclaim rule and its attendant res judicata effect." 2008–NMSC–038, ¶ 18, 144 N.M. 424, 188 P.3d 1175 (alterations in original) (internal quotation marks and citation omitted). Opposing-party status "fairly alerts litigants that all claims and counterclaims 'aris[ing] out of the transaction or occurrence' must be brought at one time under penalty of waiver." *Id.* ¶ 24 (alteration in original).

{18} The second requirement of Rule 1–013(A) is that the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rule 1–013(A).

{19} We apply the "logical relationship" test to determine whether the claims of a second lawsuit arise out of the transaction or occurrence that is the subject matter of the first lawsuit. *Heffern v. First Interstate Bank*, 99 N.M. 531, 534, 660 P.2d 621, 624

(Ct.App.1983); *see also Slide–A–Ride of Las Cruces, Inc.*, 105 N.M. at 435–36, 733 P.2d at 1318–19 ("In New Mexico, a transaction or occurrence is the same if a 'logical relationship' exists between the opposing parties' claims.") A logical relationship will be found if both the claim and the counterclaim have a "common origin" and "common subject matter." *Brunacini v. Kavanagh*, 117 N.M. 122, 126, 869 P.2d 821, 825 (Ct.App.1993). For example, in *Brunacini*, we stated:

> In the present case the claim for malpractice and the claim for legal fees have a common origin (the opinion letter) and a common subject matter (the performance of legal services). The two claims are logically related, and, absent some other consideration, the claim for legal malpractice was a compulsory counterclaim to the [l]aw [f]irm's claim for legal fees.

*Id.*

{20} The holding in *Brunacini* was reaffirmed in *Computer One, Inc.*, 2008–NMSC–038, ¶ 26, 144 N.M. 424, 188 P.3d 1175 (stating based on *Brunacini* that "if the [law firm] had wanted to file a separate suit for breach of contract against [the law firm's client] for its attorney fees, then [the client] would have had to press its legal malpractice allegations simultaneously as a compulsory counterclaim"). The *Brunacini* holding, that tort claims for legal malpractice are compulsory counterclaims to a breach of contract claim, makes it clear that the logical-relationship test does not rest on the substantive law that governs the different claims, but rather on whether the claims arise out of the same transaction or series of transactions. *See also Heffern*, 99 N.M. at 532, 534, 660 P.2d at 622, 624 (holding that a logical relationship existed between a bank's foreclosure action and the borrower's tort claims for conversion, wrongful hiring, unconscionable trade practices, and intentional misconduct).

{21} In the case before us, the "opposing-party" requirements are satisfied. The Key complaint sued Adams pursuant to a dispute between the parties. The Adams complaint sued Key pursuant to a dispute between the parties. Thus, the parties' relationship is adversarial in nature and creates "opposing parties" within the meaning of Rule 1–013(A).

{22} Second, the claims asserted in the two actions are "logically related" because they have a common origin (the Agreement) and a common subject matter (the operation of the ranch). Moreover, as discussed in *Computer One, Inc.*, the allegations in the Key complaint, including the attachment of the Agreement as an exhibit thereto, "fairly alerted" Adams to the adversarial nature of Key's claims under the Agreement and concerning the operation of the ranch. 2008–NMSC–038, ¶ 24, 144 N.M. 424, 188 P.3d 1175. The allegations and conduct set forth in the Key complaint are contrary to a legal conclusion that Key and Adams operated the ranch in a partnership as partners. *See Armstrong v. Reynolds*, 102 N.M. 261, 262, 694 P.2d 517, 518 (1985) (stating that the pattern of conduct "indicates that a partnership relationship never existed" because "[n]one of the factors which would suffice to show the creation of a partnership relationship [was] present"). Stated another way, the Key complaint "fairly alerted" Adams to Key's assertion that, despite the "split equal" language of the Agreement, Key considered the ranch to be his operation and not a partnership. As such, any and all claims Adams had arising out of the parties' disputes under the Agreement and which were related to the operation of the ranch were Rule 1–013(A) compulsory counterclaims to the Key complaint that had to be asserted in the Key suit "under penalty of waiver." *See Computer One, Inc.*, 2008–NMSC–038, ¶ 24, 144 N.M. 424, 188 P.3d 1175. This included any and all claims that the parties' relationship constituted a partnership, that Key breached a fiduciary duty to Adams, and that Adams had a right to an accounting and for damages.

{23} The Rule 1–013(A) "penalty of waiver" applies even though Adams filed no pleadings in the Key case and it ended in a default judgment against Adams. *Heffern*, 99 N.M. at 533, 660 P.2d at 623; *Bentz v. Peterson*, 107 N.M. 597, 601, 762 P.2d 259, 263 (Ct.App.1988). Furthermore, because Rule 1–013(A) is applicable and "fatal" to all compulsory counterclaims, Adams has forev-

er waived his right to adjudicate all of the claims set forth in the Adams complaint. *Computer One, Inc.*, 2008–NMSC–038, ¶ 23, 144 N.M. 424, 188 P.3d 1175 (stating that "a party's failure to raise compulsory counterclaims will be fatal to its subsequent lawsuit"); *see also Heffern*, 99 N.M. at 533, 660 P.2d at 623 (stating that "[u]nder [Rule 1–013(A) ] failure to plead a compulsory counterclaim bars a later action on that claim").

{24} It is undisputed that Adams did not assert that a partnership existed or that an accounting and damages were due as counterclaims to the Key complaint. As a matter of law, Rule 1–013(A) required Adams to do so, and, therefore, Key was entitled to summary judgment against Adams.

## CONCLUSION

{25} The district court's order dismissing the Adams complaint with prejudice is affirmed.

{26} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN, Chief Judge and RODERICK T. KENNEDY, Judge.