This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>September 23, 2013</u>

**No. 31,595**

**JEFFERY POTTER,**

     Plaintiff-Appellant,

v.

**CHRIS PIERCE, WILLIAM DAVIS,**
**DAVIS & PIERCE, P.C., and JOHN DOE LAW FIRM,**

     Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

William G. Gilstrap, P.C.
William G. Gilstrap
Albuquerque, NM

Law Offices of Daymon B. Ely
Daymon B. Ely
Albuquerque, NM

for Appellants

Domenici Law Firm
Pete V. Domenici, Jr.
Lorraine Hollingsworth
Albuquerque, NM

for Appellees

**OPINION**

**HANISEE, J**.

{1}     In this case we examine whether Jeffery Potter (Plaintiff) may bring a malpractice action against his former bankruptcy attorneys (Defendants) after Plaintiff objected to Defendants' fee applications with allegations of malpractice and the bankruptcy court awarded fees in a final order.  The district court dismissed the malpractice claim on the ground that it was barred by the principles of claim preclusion because Plaintiff did or could have brought the malpractice claim in response to Defendants' fee applications.  We agree that Plaintiff's claim is barred because the elements of claim preclusion are met, and Plaintiff had a full and fair opportunity to litigate the malpractice claim but failed to successfully do so.  We affirm.

**I.     BACKGROUND**

{2}     With Defendant Chris Pierce as his lead attorney, Plaintiff filed for bankruptcy under Chapter 11 of the Federal Bankruptcy Code.  The action was later converted to a Chapter 7 bankruptcy.  During the proceedings, Plaintiff purchased at auction any

malpractice and related claims he might have against Defendants.

{3}     Pierce represented Plaintiff in the bankruptcy proceedings for approximately one year.  Plaintiff also employed Martin Friedlander, a California attorney, to represent him in all matters other than the bankruptcy.  Eventually, citing "a fundamental disagreement" with Plaintiff, Defendants, including Pierce, filed a motion to withdraw as Plaintiff's counsel, which was granted.  Defendants then filed two applications for attorney fees with the bankruptcy court.

{4}     Before the fee application hearing, Plaintiff, acting pro se, filed objections to the fee application within which Plaintiff accused Defendants of malpractice.  At the hearing, Plaintiff was represented by replacement counsel and Friedlander appeared at the hearing as a creditor.  Pierce testified with respect to the fee applications, and Friedlander questioned Pierce about alleged failures in his representation of Plaintiff.  Plaintiff elected not to cross-examine Pierce on any topic, including the pertinent basis on which he countered Defendants' fee applications: Pierce's malpractice. Following the hearing, the bankruptcy court allowed some fees, but disallowed others that the court concluded were premised on work that was duplicative, administrative, excessive, or not beneficial to the bankruptcy.  The bankruptcy court made no express findings or conclusions related to Plaintiff's  malpractice allegations.  Plaintiff's bankruptcy was ultimately denied.

**{5}** Almost ten months following this denial, Plaintiff filed the malpractice claim that is the subject of this appeal. The district court granted Defendants' motion for summary judgment on the ground that the claim was barred by claim preclusion[1] because the bankruptcy court's grant of fees constituted a final order on Defendants' fee applications and the bankruptcy court's decision necessarily incorporated that court's assessment of Defendants' representation of Plaintiff. Plaintiff now appeals.

## II.    DISCUSSION

**{6}** On appeal, Plaintiff argues that the district court erred in concluding that his malpractice claim was precluded, and instead maintains that the court should have proceeded to the merits of the case. "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. . . .We review . . . legal questions de novo." *Self v. United Parcel Serv.,*

---

[1] We recognize that the term "res judicata" encompasses both claim and issue preclusion. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4402 (2d ed. 2002). We also acknowledge that New Mexico and federal cases sometimes use the terms "res judicata" and "claim preclusion" interchangeably. *See, e.g., Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335 (10th Cir. 1988); *Computer One, Inc. v. Grisham & Lawless*, P.A., 2008-NMSC-038, ¶ 30, 144 N.M. 424, 188 P.3d 1175. For clarity, we use the term "claim preclusion" when possible to signify application to a claim that has been fairly and fully litigated. When used in quotations, the term "res judicata" "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).

*Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted); *Rosette, Inc. v. U.S. Dep't of the Interior*, 2007-NMCA-136, ¶ 31, 142 N.M. 717, 169 P.3d 704 ("When the facts are not in dispute, the preclusive effect of a prior judgment is a question of law reviewed de novo.").

**A.      The Elements of Claim Preclusion Have Been Satisfied**

**{7}**      In general, "[t]he purpose of our application of res judicata is to protect individuals from multiple lawsuits, to promote judicial economy, and to minimize the possibility of inconsistent judgments." *Moffat v. Branch*, 2002-NMCA-067, ¶ 14, 132 N.M. 412, 49 P.3d 673.  "Res judicata applies if three elements are met: (1) a final judgment on the merits in an earlier action, (2) identity of parties or privies in the two suits, and (3) identity of the cause of action in both suits." *Rosette, Inc.*, 2007-NMCA-136, ¶ 33.  At the outset, we note that the requirements for res judicata are the same under both New Mexico and federal law. *See Edwards v. First Fed. Sav. & Loan Ass'n*, 1985-NMCA-015, ¶ 40, 102 N.M. 396, 696 P.2d 484 ("Unless obliged to follow a contrary decision of our [S]upreme [C]ourt," we apply federal law to "determin[e] the preclusive effect of a Federal court's judgment[.]").

**{8}**      With regard to the third element, both New Mexico and the Court of Appeals for the Tenth Circuit have adopted the "transactional approach" set out in the Restatement (Second) of Judgments §§ 24-25 (1982) for determining whether a later

4

cause of action is the same as an earlier one. *Petromanagement Corp.*, 835 F.2d at 1335 (adopted in the Tenth Circuit); *Computer One, Inc.*, 2008-NMSC-038, ¶ 31 (adopted in New Mexico). Under this approach, two issues are the "same claim" for purposes of claim preclusion when "they involve a common nucleus of operative facts." *Rosette, Inc.*, 2007-NMCA-136, ¶¶ 23, 33 (internal quotation marks and citation omitted). A common nucleus might be identified by examining "(1) how the facts relate in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient trial unit; and (3) whether treatment of the facts as a single unit conforms to the parties' expectations, or business understanding or usage." *Chavez v. City of Albuquerque*, 1998-NMCA-004, ¶ 23, 124 N.M. 479, 952 P.2d 474.

{9} Notably, claim preclusion applies only when "the claimant [has] had a full and fair opportunity to litigate the claim in the original action." *Moffat,* 2002-NMCA-067, ¶ 17; *see Grausz v. Englander*, 321 F.3d 467, 474 (4th Cir. 2003) (considering "whether [a] fee proceeding in bankruptcy court provided [the plaintiff] with an effective opportunity to litigate his malpractice claim"). Finally, "[r]es judicata bars not only claims that were raised in the prior proceeding, but also claims that could have been raised." *City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 18, 134 N.M. 216, 75 P.3d 816; *Grausz*, 321 F.3d at 473-74 (considering whether the plaintiff "knew or should have known" of his malpractice claim at the time of a fee

adjudication in bankruptcy court).

{10} At issue in this case is whether the district court correctly found that the elements of claim preclusion were satisfied. Under de novo review, we consider each element in turn. The first element of our analysis is whether there was a final judgment on the merits in the earlier proceedings. *Rosette, Inc.*, 2007-NMCA-136, ¶ 33. Although "an interim award of attorney[] fees . . . is not final because [it] . . . leav[es] open the possibility that the claim will later be enlarged through future fee applications[,] . . . a[n] award that determines all of the compensation owed to an attorney . . . [is] final." *In re Iannochino*, 242 F.3d 36, 44 (1st Cir. 2001) (internal quotation marks and citation omitted). Here, Defendants' fee applications were adjudicated after Defendants had withdrawn from representation of Plaintiff on May 22, 2006. The second and final fee application covered the period from May 25, 2005 through May 18, 2006. Thus, there was no possibility of further fee applications. The fee award was a final order.

{11} The second question in the claim preclusion analysis is whether the parties in the two suits are identical. *Rosette, Inc.*, 2007-NMCA-136, ¶ 33. This element is satisfied because Plaintiff is both a party to the malpractice claim and a party in interest to the fee proceedings. *See* 11 U.S.C. § 1109(b) (2006) (including "the debtor" among a list of parties in interest); 11 U.S.C. § 1121(c) (2006) (same); *In re*

6

*Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995) (stating that party in interest is "generally understood to include all persons whose pecuniary interests are[] directly affected by the bankruptcy proceedings" (internal quotation marks and citation omitted)); *Grausz*, 321 F.3d at 473 (holding that the plaintiff was a party in interest to fee proceedings because he "had a pecuniary interest in the outcome of the fee applications").

{12}     Most vigorously disputed by the parties is whether the third element of claim preclusion was satisfied, i.e. whether the district court correctly determined that the dispute over attorney fees and malpractice in bankruptcy court was the "same claim" as Plaintiff's subsequent malpractice claim in state court.  This particular fact pattern has yet to be addressed by New Mexico appellate courts.  Nonetheless, we find helpful cases from the Courts of Appeals for the First, Fourth, Fifth, and D.C. Circuits, which addressed fact patterns congruent to the legally operative facts in this case, and found that claim preclusion bars malpractice claims following fee adjudications in bankruptcy court. *See, e.g., Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 491-93 (D.C. Cir. 2009); *Grausz*, 321 F.3d at 475-76; *In re Intelogic Trace, Inc.*, 200 F.3d 382, 391 (5th Cir. 2000); *In re Iannochino*, 242 F.3d at 41-49.

{13}     In *Grausz*, the plaintiff filed for bankruptcy with the assistance of his counsel.

7

321 F.3d at 469. Counsel later withdrew and filed two fee applications; both were approved without objection from the plaintiff. *Id.* at 470. Subsequently, the plaintiff's bankruptcy discharge was denied and the plaintiff filed a malpractice claim against his counsel. *Id.* at 471. The Fourth Circuit held that the plaintiff's malpractice claims were precluded because approval of the fee applications was a final order. *Id.* at 472. The plaintiff was a "party in interest" to the fee dispute since he "ha[d] a pecuniary interest in the distribution of assets to creditors[,]" *id*. at 472-73, and "[t]he core of operative facts in the . . . fee application proceeding and the malpractice action . . . are the same. *Id*. at 473. Both actions relate[d] to the nature and quality of legal services the [firm] provided to [the plaintiff] in connection with the bankruptcy proceeding." *Id.* (internal quotation marks and citation omitted).

{14} The Court recognized that the bankruptcy code "necessarily included an inquiry by the bankruptcy court into the quality of professional services rendered by the [firm]." *Id*. at 473 (citing 11 U.S.C. § 330(a)(3) (2003)). "By granting [the] firm's . . . fee application[s], the bankruptcy court impliedly found that the firm's services were acceptable throughout its representation of [the plaintiff]." *Id.* Having determined that the bankruptcy court had jurisdiction over the malpractice claim under 28 U.S.C. § 1334 (2005), because it "arose in" the bankruptcy case, the Court determined that "[p]rocedural mechanisms were . . . available [in bankruptcy court]

8

for [the plaintiff] to raise his malpractice claim in connection with the fee proceeding" under Bankruptcy Rule 3007. *Grausz*, 321 F.3d at 469, 474; *see* Fed. R. Bankr. P. 3007(b) (stating procedures for adversarial proceedings)[2]. The Court also determined that the plaintiff "knew or should have known there was a real likelihood that he had a malpractice claim against . . . firm." *Id.* at 474.

{15}     The same conclusion was reached by the First, Fifth, and D.C. Circuits. *See In re Iannochino*, 242 F.3d at 47-49 (concluding that (1) "the central factual question in both claims is the same:  What advice did the defendants give to the [the plaintiffs] during the bankruptcy, and what was the quality and value of that advice?"; (2) there was "substantial overlap of the . . . proofs required to determine the essential issue in both claims[;]" and (3) "the [plaintiffs] knew all the facts necessary for bringing their malpractice claim at the time of the fee application, and we think it reasonable for [the defendants] to expect that all concerns about the quality of their services would have been raised in response to the fee application" (internal quotation marks and citation

---

[2]Rule 3007 of the Federal Rules of Bankruptcy Procedure was amended in 2007, altering the procedures related to adversary proceedings like fee applications. Fed. R. Bankr. P. 3007 advisory committee's notes; Fed. R. Bankr. P. 7001 (defining claims that initiate adversary proceedings); 10 *Collier on Bankruptcy* ¶ 7001.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); Fed. R. Bankr. P. 7042.  Although the procedures under Rule 3007 have changed, the fundamental point in *Grausz*—that the bankruptcy court has mechanisms for adjudicating malpractice claims—remains true. *See* 9 *Collier on Bankruptcy* ¶ 3007.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The effect of the [amendment] in substitution for the predecessor language does not appear to be significant.").

omitted)); *In re Intelogic Trace Inc.*, 200 F.3d at 388 (holding that "the award of professional fees and the . . . malpractice claims concern the same nucleus of operative facts and meet the transactional test," because the bankruptcy court considered the quality and nature of counsel's services in the fee adjudication (internal quotation marks and citation omitted)); *Capitol Hill Grp.*, 569 F.3d 485, 490-93 (same).

{16} Notably, in each of the aforementioned cases, each court found that the "identity of claims" element of the claim preclusion test was met because the questions presented to the bankruptcy court in a fee proceeding inherently involve an assessment of the quality of the professionals' work similar to the assessment required in a malpractice action. *See Capitol Hill Grp.*, 569 F.3d at 491 (stating that "the bankruptcy court was in a position to judge the quality of [the attorneys'] services"); *Grausz*, 321 F.3d at 473; *In re Intelogic Trace, Inc.*, 200 F.3d at 388; *In re Iannochino*, 242 F.3d at 47 (citing 11 U.S.C. § 330(a)(3)(A) as requiring the bankruptcy court to "undertake a comprehensive evaluation of the services listed in a fee application"). In addition, each court relied on the facts of the case to determine that the plaintiffs were sufficiently aware of their malpractice claims at the time of the fee proceedings to have then raised those claims. *See Capitol Hill Grp.*, 569 F.3d at 491; *Grausz*, 321 F.3d at 474; *In re Intelogic Trace, Inc.*, 200 F.3d at 389; *In re Iannochino*, 242 F.3d at 49. Finally, each of these cases either explicitly or implicitly

10

relied on the ability of the bankruptcy court to hear the malpractice claim through an adversary proceeding. *See Capitol Hill Grp.*, 569 F.3d at 492*; Grausz*, 321 F.3d at 474-75; *In re Intelogic Trace, Inc.*, 200 F.3d at 389-90; *In re Iannochino*, 242 F.3d at 48.

**{17}** We likewise conclude that the cause of action within each proceeding at issue in this case arises from the same "nucleus of operative facts." *Rosette*, 2007-NMCA-136, ¶ 33. Both the fee proceedings and malpractice claim address the same conduct during the same period of representation. In addition, under 11 U.S.C. § 330, the bankruptcy court was required to consider the quality of Defendants' professional services in order to determine whether the fees requested were appropriate. *See Grausz*, 321 F.3d at 473. Similarly, adjudication of malpractice claims requires an assessment of whether Defendants' services were rendered "with the skill, prudence, and diligence that an ordinary and reasonable lawyer would use under similar circumstances." *Black's Law Dictionary* 1044 (9th ed. 2009) (defining legal malpractice). The bankruptcy court's rejection of Plaintiff's allegations of malpractice is implicit in its approval of Defendants' fee request.

**{18}** We agree with the district court that the "practical considerations" addressed in *Grausz* and *In re Intelogic Trace, Inc.* also support preclusion of Plaintiff's claim. *See Grausz*, 321 F.3d at 473-74; *In re Intelogic Trace*, 200 F.3d at 388-89. In addition

11

to establishing the elements of claim preclusion, which we have determined were met, these considerations address whether Plaintiff had a full and fair opportunity to litigate his malpractice claim. As discussed above, Plaintiff could have brought and pursued his malpractice claim in an adversarial proceeding in the bankruptcy court, where a final judgment was reached between these parties that provided a determinative finding regarding the Defendants' quality of representation. In sum, we conclude that all of the elements of claim preclusion are satisfied here.

**B.      *Computer One* Does Not Bar Claim Preclusion in this Case**

{19}      Plaintiff makes several arguments as to why his malpractice claim should not be precluded. Plaintiff first argues that *Computer One*, *Inc.*, 2008-NMSC-038, stands for the proposition that "[claim preclusion] . . . cannot be based on an application for fees by way of an attorney charging lien or motion for fees as occurred in [his] bankruptcy case[,]" and that "approval [of attorney fees] cannot operate [to preclude] a later malpractice claim." For reasons explained below, we disagree.

{20}      Our Supreme Court in *Computer One, Inc.* relied on the same basic claim preclusion test stated above to conclude that the malpractice claim before it differed from the issues addressed in the *charging lien* that proceeded it. Notably, the *Computer One* Court assumed that the first two claim preclusion elements—a final order and identity of parties—were met. *See* 2008-NMSC-038, ¶¶ 31-36 (not

addressing those elements). It then focused on the facts of the case as they related to the third element: whether the claims were identical. *Id.*

{21} In that case, Computer One filed suit against Sandia Corporation for breach of contract and misrepresentation. *Computer One*, 2008-NMSC-038, ¶ 2. Computer One was represented by Grisham & Lawless, P.A. (the Firm) *Id.* ¶ 3. The Firm entered into a settlement agreement with Sandia Corporation, but Computer One maintained that the absence of its own ratification of the agreement meant that the settlement was unauthorized. *Id.* The Firm withdrew as counsel for Computer One and filed notice of an attorney charging lien against the settlement proceeds, *id.*, which the district court enforced. *Id.* ¶ 4. After a series of proceedings in which Computer One filed objections to the charging lien, the "[district] court ordered disbursement of the settlement funds including payment of the Firm's charging lien." *Id.* ¶ 7.

{22} Over a year later, Computer One filed a legal malpractice claim against the Firm "arguing that the Firm had been negligent in the manner in which it had evaluated Computer One's claims against Sandia [Corporation] and their potential settlement value." *Id.* ¶ 8. The Firm moved for summary judgment on the ground that Computer One's claims were barred because they were compulsory counterclaims to the Firm's motion for a charging lien under Rule 1-013(A) NMRA and because claim preclusion applied. *Computer One, Inc.*, 2008-NMSC-038 ¶¶ 9-10. The district court agreed and

13

granted the motion, *id.*, and this Court affirmed that the claim was a compulsory counterclaim. *Id.* ¶ 1.

{23} Our Supreme Court reversed on both grounds. *Id.* ¶ 38. Relying on *Bennett v. Kisluk*, 1991-NMSC-060, 112 N.M. 221, 814 P.2d 89, and Rule 1-013(A) (stating the elements of a compulsory counterclaim), it first determined that Computer One's malpractice claim was not a compulsory counterclaim to the Firm's motion for a charging lien because there was no adversarial relationship between Computer One and the Firm sufficient "to impose upon the client the preclusive effect of Rule 1-013(A)." *Computer One, Inc.*, 2008-NMSC-038 ¶¶ 20, 25, 28. The Court reasoned that Rule 1-013(A)'s requirement that the parties be "opposing part[ies]" rests on a "notion of fair notice." *Computer One, Inc.*, 2008-NMSC-038 ¶ 25. "Without an adversarial relationship, a party would not be on notice and would not necessarily know that he or she would have to assert all defenses or claims against a party who has filed a motion." *Id.* ¶ 23 (internal quotation marks and citation omitted).

{24} Indeed, "[t]he preclusive effect of Rule 1-013(A) is premised on the formality of an opposing party, because that very status fairly alerts litigants that all claims and counterclaims arising out of the transaction or occurrence must be brought at one time under penalty of waiver." *Id.* ¶ 24 (alteration, internal quotation marks, and citation omitted). Our Supreme Court held "one must first be a 'party' before one can be an

14

'opposing party[,]'" and that "an attorney does not transform his former client into either, merely by taking steps to secure attorney fees in the same underlying proceeding." *Id.* ¶ 25; *see Bennett*, 1991-NMSC-060, ¶ 10 ("An 'opposing party' must be one who asserts a claim against the prospective counterclaimant in the first instance."). In sum, the Court concluded that "the compulsory counterclaim rule does not apply to an attorney's charging lien," and as such, would not apply to bar a later malpractice claim. *Computer One, Inc.*, 2008-NMSC-038 ¶ 28. [3]

{25} Our Supreme Court next examined whether Computer One's claim was barred by claim preclusion "[i]ndependent of any preclusive effects of Rule 1-013(A)." *Id.* ¶ 30; *see Adams v. Key*, 2008-NMCA-135, ¶ 15, 145 N.M. 52, 193 P.3d 599 (distinguishing between compulsory counterclaims under Rule 1-013(A) and claim preclusion principles). The relevant dispute was over the third prong of claim preclusion: whether the malpractice claim was the "same claim" as the fee request. *Computer One, Inc.*, 2008-NMSC-038, ¶¶ 32-36. The Court's analysis focused chiefly on whether Computer One had a full and fair opportunity to litigate its claim. *See id.* ¶¶ 32-35. It noted that a motion for a charging lien invokes the equitable powers of the court and does not limit an attorney from "assert[ing] all claims the

---

[3]The parties here appear to agree that Plaintiff's claim was not a compulsory counterclaim to Defendants' fee applications. We discuss this aspect of *Computer One, Inc.* in order to highlight the distinction between the application of Rule 1-013(A) and claim preclusion principles.

attorney may have against the client" at law. *Id.* ¶¶ 14, 16. The Court compared Computer One's argument against the charging lien with that asserted in the malpractice claim, *id.* ¶¶ 33, 34, and concluded that "Computer One's objections to the charging lien reflect the limited nature of such a lien." *Id.* ¶ 35. Ultimately, "[b]ecause the objections to the charging lien were distinct from the claim asserted in Computer One's malpractice lawsuit, [our Supreme Court] reject[ed] the Firm's argument that the issues in Computer One's malpractice claim were necessarily litigated below." *Id.*

{26}     Furthermore, the Court relied on the facts of that case to determine that even if Computer One could have raised the malpractice claim in the context of the charging lien motion, it "would not change our result in this particular case." *Id.* ¶ 36. Because the Firm had "affirmatively acknowledg[ed] that the charging lien was not related to the malpractice claim, [it could not] change course and claim an opportunity for Computer One to do the very thing it urged Computer One *not* to do below." *Id.*; *see City of Sunland Park*, 2003-NMCA-098, ¶ 18 (stating claim preclusion bars claims that could have been brought in prior proceedings).

{27}     Thus, *Computer One*, *Inc.* rests in part on claim preclusion and in part on principles of equity. It concluded that because the malpractice claim sought damages amounting to the difference between the actual settlement amount and the potential

16

settlement had the Firm's representation been more effective, rather than recovery of fees awarded, the malpractice claim was "distinct" from Computer One's objections to the charging lien. 2008-NMSC-038, ¶¶ 34-35. Much of this analysis rests on "the limited nature of . . . a [charging] lien." *Id.* ¶ 35. There is no clear statement that claim preclusion never applies to bar malpractice claims after adjudication of broader fee applications.

{28} In sum, contrary to Plaintiff's argument, *Computer One, Inc.* does not stand for the proposition that malpractice claims are never barred by adjudication of fee applications. Rather, we conclude that when a plaintiff actually argues or could have argued, or asserted but did not substantively pursue malpractice as a defense to a fee application or as a separate claim, claim preclusion may apply to bar later malpractice claims. As the district court noted, this holding is not inconsistent with federal law.

{29} Moreover, *Computer One, Inc.* is specific to the facts and circumstances of that case. For instance, the Court grounded its holding in the context of charging liens. *See id.* ¶ 12 ("We begin our discussion with . . . the history of attorney charging liens, because the resolution of the issue presented here becomes clear when the historical basis for the charging lien is considered." (alteration, internal quotation marks, and citation omitted)). New Mexico cases have recognized that a charging lien "is a peculiar lien, to be enforced by peculiar methods." *Prichard v. Fulmer*, 1916-NMSC-

17

046, ¶ 29, 22 N.M. 134, 159 P. 39 (internal quotation marks and citation omitted); *see Sowder v. Sowder*, 1999-NMCA-058, ¶ 8, 127 N.M. 114, 977 P.2d 1034 (calling a charging lien "a unique method of protecting attorneys" and stating that "an attorney charging lien functions in a very limited manner"). The fees in question here were not sought through a charging lien. Finally, to the extent that *Computer One* relied on the fact that the damages sought by Computer One were not related to the fees paid to the attorneys, that case is further distinguishable because here Plaintiff specifically seeks "disgorgement of [attorney] fees." *See Computer One*, 2008-NMSC-038, ¶ 34 (stating, "[s]ignificantly, in [its] complaint Computer One [did] not . . . seek to recover its fees paid to the Firm").

{30}     Finally, *Computer One, Inc.* does not in any way address the preclusive effect of fee adjudications in bankruptcy court. The requirements and capabilities of bankruptcy courts make *Computer One, Inc.* inapposite in at least two ways. First, unlike analysis of charging liens, analysis of fee applications in bankruptcy proceedings "necessarily include[s] an inquiry . . . into the quality of professional services rendered." *Grausz*, 321 F.3d at 473; 11 U.S.C. § 330(a)(3)(C), (D), (E) (stating some of the factors the bankruptcy court may consider in determining fees). Second, *Computer One, Inc.* relies in significant part on the Court's doubt that a malpractice claim could be addressed in the context of a charging lien. 2008-NMSC-

038, ¶ 36. In stark contrast, the rules governing bankruptcy proceedings permit a claim for malpractice to be brought as an adversary proceeding. *See* Fed. R. Bankr. P. 3007; *Grausz*, 321 F.3d at 474. Thus, unlike in *Computer One*, *Inc.*, in this case there were readily available avenues for Plaintiff to pursue his malpractice contention in bankruptcy court.

**{31}** *Computer One Inc.*'s only categorical statement is that a fee adjudication does not make an attorney and his or her client (or former client) into "opposing parties" such that malpractice claims related to the attorney's representation of the client are compulsory under Rule 1-013(A) NMRA. Although *Computer One*, *Inc.* held that the plaintiff's malpractice claim was not barred by claim preclusion, its holding was specific to the facts and circumstances of that case, and in our view, not a blanket directive regarding the preclusive effects of fee adjudications. We conclude that the present case is analogous to the federal cases we discussed above, and for reasons explained in the previous section of this Opinion, all of the elements of claim preclusion have been met. *Computer One* does not change the outcome of this case.

**C.    Plaintiff's Remaining Arguments Regarding the Elements of Claim Preclusion Fail**

**{32}** Plaintiff additionally argues that he could not have brought his malpractice claim at the time of the fee proceeding because at that juncture his bankruptcy petition had not yet been denied, citing *Sharts v. Natelson*, 1994-NMSC-114, 118 N.M. 721,

19

885 P.2d 642. The district court rejected this argument, stating that it "fails on the facts." We agree that this argument is unavailing. Plaintiff's reliance on *Sharts* is misplaced. In that case, our Supreme Court considered the statute of limitations for attorney malpractice claims. *Id.* ¶ 10. It stated that "a cause of action for legal malpractice does not accrue until the client discovers, or through reasonable diligence should discover, the facts essential to the client's claim." *Id.* ¶ 15.

{33}    Plaintiff contends that the *Sharts* holding means that "a cause of action for legal malpractie can only exist when the plaintiff suffers damages." While the *Sharts* Court held that "the 'actual injury' standard . . . accurately describes the nature of the harm the client must suffer before the statute of limitations begins to run[,]" it also stated that "the focus . . . should be on discovery of the *fact* of damage, not the amount." *Id.* ¶¶ 11, 12 (internal quotation marks and citation omitted). The Court expressly rejected the position that a malpractice claim did not accrue "until [the client's] rights were fixed by entry of [an] adverse . . . judgment." *Id.* ¶ 14. It is clear here that Plaintiff had discovered the fact of his damage and knew before the fee proceedings that he might have a claim for malpractice. In fact, he alleged malpractice multiple times in his objections to the fee applications, asserting that Pierce had forged his signature on documents, failed to prosecute a suit, and facilitated a fraudulent conveyance. Plaintiff stated, "[t]he damages attributable to this malpractice greatly

20

exceed the fees that [Defendants are] seeking in [the] [m]otion for [f]ees." Thus, at the time of the fee proceedings Plaintiff was aware of both the conduct he later complained of and the potential impact of that conduct. *See Grausz*, 321 F.3d at 474 (rejecting Grausz's argument that "he could not have understood that he would have a malpractice claim against [his attorneys] before the final fee order was entered").

{34} Plaintiff also argues that the fact that he purchased the malpractice claim at auction militates against application of claim preclusion.[4] This argument is unavailing because the right Plaintiff purchased at auction—his right to litigate his malpractice claim—has not been impeded. Plaintiff in fact filed a complaint, initiating the present suit. Defendants raised a legitimate defense to the complaint consistent with the terms of the sale that reserved to them "all rights, defenses, counterclaims, crossclaims, and other rights or claims of any kind whatsoever arising out of or related to any malpractice claims against them." As the district court noted, it was Plaintiff's obligation to be aware of any "negative baggage [that] might . . . be attached to the claims" including possible defenses to them. The fact of the sale of the malpractice claim presents no barrier to Defendants' assertion of claim preclusion, nor does the

---

[4] The district court noted that "New Mexico has not ruled on the validity or invalidity of the assignment of a legal malpractice claim" and that it would "approach[] this case from the apparent perspective of the parties that the purchase at auction of the malpractice claims . . . was valid." Since neither party challenges the validity of the sale on appeal, we too do not address that issue.

purchase of something valueless bestow worth.

{35} Therefore, we conclude that all of the elements of claim preclusion have been satisfied and Plaintiff was sufficiently aware of the facts of his claim at the time of the fee adjudication such that preclusion of them in later proceedings is fair. We thus affirm the district court.

**CONCLUSION**

{36} For the foregoing reasons, we affirm the grant of summary judgment in favor of Defendants.

{37} **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**MICHAEL D. BUSTAMANTE, Judge**

22